Mr. Misfeld Thank you. Good morning. May it please the court. My name is Jeff Misfeld and I represent nurse James Riano the plaintiff appellant I'm here asking the court to set aside nurse Riano's termination from the Veterans Administration Because the Veterans Administration failed to provide him with constitutionally sufficient due process When it denied him the opportunity to confront and cross-examine his anonymous accusers Mr. Riano at the time of his termination had about 30 years of experience as a medical provider and Almost five years with the Veterans Administration as a medical provider in about 2007 he's asked to run a an STD clinic to treat returning veterans from Iraq and Afghanistan because the clinic had noted that there were a number of Individuals returning from these wars with genital warts Mr. Riano was asked to run the clinic and He agreed given his experience many years before as a Navy Corpsman in the 70s having administered genital wart treatments The VA verified that Mr. Riano was capable of running the clinic by merely asking him to treat a Pass that test. Okay. We're not here on Plenary review of the agency's decision. We're here on a Matthews versus Eldridge claim as I understand the scope of this appeal which is that his due process rights were violated because he wasn't permitted by the Decision-making board to cross-examine the involved patients And it seems to me that that claim isn't gonna get out of the starting blocks because he admitted performing the examinations in the way that the patients reported it and that the agency the VA adjudicators found was Contradicted by Appropriate medical practice. So cross-examination would not have added anything when I respectfully disagree Mr. Riano explained That the treatment he provided was done pursuant to his training Right, but that doesn't that's what he explained the the agency adjudicators were entitled to reject that explanation, but examining cross-examining the affected patients wouldn't have Supported that Claim that he was making he it was contradicted by the medical experts who said no this isn't Medically acceptable practice, but there was no factual dispute about what? The examination entailed. Well, I think there is a factual dispute with respect to a number of the patients accounts of what happened right, but not about the basic right and there's what he was doing during the examination which the medical experts from the VA said was was not Medically appropriate. I think it's important to note that there's there was no Every witness from Mr. Riano's perspective as well as from the VA's perspective Agreed that there are no specific protocols to be used to examine an individual's genital area Right, so the patients aren't going to be able to shed any light on the medical question, right? It would just be a lot of detail about what occurred during the course of the examination. But if the question at the termination hearing was whether the basic Facts of the type of examination he was performing was medically appropriate or not. That's that's a medical judgment. There were There was medical testimony Presented by both sides and the VA made its determination The patients aren't going to be able to contribute to that one way or the other right, but the patient's descriptions of what happened was used by the disciplinary appeals board to Ascribe a nefarious intent under Sreano's part And that that was right that may have been true but the basic decision to fire him was made because what he was doing was not medically appropriate as the medical experts Testified to well the standard of care is in dispute There were a number of providers. Dr. Bigelow, right, but the you know, the patients aren't going to be able to speak to that That's a medical determination that requires expert testimony, right? So The Matthews versus Eldridge question about whether he was denied due process because he couldn't cross-examine the patients Seems to me is answered by that fact their testimony or their cross-examination Would not have added anything to the main question and dispute The the issue is one of credibility Mr. Rea was admitting that he was performing the examination in a particular way that the agency's doctors said Was inappropriate what they said was not necessarily what they would do and in these circumstances It's unusual because the better job that someone would do they said it was unnecessary Which was right which was right Well, and apparently not disputed No, it was disputed a number of providers Opine that mr. Riano's methods were within the standard of care the defense experts didn't say it was medically indicated Your clients own experts didn't really support his position They testified that there's no specific protocol to be followed and that within that Greater universe of proper protocols that his methods worth and were within the standard of care Not that they would have necessarily used the same methods But that his was within his methods were within the standard of care So, I think it is important in a case like this where The credibility of mr. Riano in terms of the nefarious intent that was intent that was ascribed to him comes from Patients who had no complaints with the methods that mr. Riano used Until they were sent what can only be described as a very contaminating questionnaire Explaining to them that they're a victim of inappropriate conduct and more or less asking them. What did nurse Riano do to you? Was it exactly? Response to Richardson against Perales Secretary relies on Richardson and Richardson held that live testimony is not essential in administrative cases Written testimony can be sufficient Your reply brief doesn't mention Richardson. So this is your crack at explaining how your position is consistent with Richardson I would think When the when there's sufficient indicia of reliability and handwritten statements or in hearsay offered by an administrative agency I think that rule holds firm but here Where the are you relying on some particular case for this? I'm not I don't you're you're asking us to make up new constitutional law 230 years into the Republic which the Supreme Court when it had the chance to do it in Richardson Said was not what the Constitution requires No, the rule is that We're a factual determination. Look it comes. The reason I ask this is Richardson said The agency can rely on written testimony But There's always a safeguard because the individual the affected individual could ask for compulsory process to bring that person in live You Didn't argue anywhere that I could see that you asked for compulsory process and that that request was turned down Did you ask the board to issue compulsory process to bring these people in? I Don't believe that prior counsel did that she requested. Well, that that's your problem, right? You've got this structure in Richardson Richardson says the agency doesn't have to produce live testimony written summaries will do but The affected person the private person can ask for compulsory process and if there was no request here for compulsory process We may not even have laid the foundation for getting to a due process argument not as Richardson saw it anyway, well, I Don't know how there could be compulsory process when the identities of the witnesses themselves were never didn't Riano submit letters from five patients Yes described so we had those five identified, right? Yes pressured by Cozart Yes interview trying to characterize his behaviors and appropriate so those were known right there were a number of they were all known to the government and In in a criminal case where somebody wants to hold the identity of an informant secret The defendant may ask for compulsory process to bring that person in even though only the government or the judge knows that person's name The problem I have is that there was no Request we don't know what the board would have done when the board was never asked well Prior counsel sought the identities the medical records and I think it's clear from the record that she was Seeking to conduct an investigation of those former patients that were unknown to Riano Okay, see my time is oh, thank you Mr. Pollack good morning. Your honors. My name is Brian Pollack. I'm assisting United States Attorney and I represent the defendant in this matter Defendant basically argued he's been denied due process because of his inability to cross-examine all the witnesses Presented and as the court has pointed out this morning. I think that it is a Overbroad portrait to paint that these witnesses were a Anonymous and that he did not have an opportunity to have the due process guaranteed to him well does has the secretary or the whoever organizes these disciplinary appeal boards issued a set of procedures that covers things like Getting hold of information by compulsory process. There is there is an entire framework and it's in the Materials the administrative record your honor. I believe it's fight inside. I believe it starts at page 160 to 175 It's the DAB. We call it the DAB framework title 38 USC 5 provides that the VA may construct its own rules and regulations So termination my question is are there such rules presumably that published in the Federal Register someplace? In fact, the DAB has no subpoena power whatsoever much like many other administrative agencies Could we just focus first on the question I'm asking? Yes. Are there published rules for the conduct of these proceedings? they are available online and they were presented to the Plaintiff at the time of the administrative proceeding available online Were they? Are they published in the Federal Register answer? Yes or no. I do not believe so So they're obviously not part of the Code of Federal Regulations that would be accurate So they're basically secret rules that maybe somebody would be let in on at the last minute The plaintiff was informed of those rules as part of these proceedings In writing. Yes given a copy a copy sent Yes, and they and they are part of the record before this courts And what did those rules say about witnesses and bringing witnesses? As noted in the in our brief We indicate that the chairman of the DAB has the authority to Okay, any witnesses that wish to be Testified at the proceeding both sides in this matter presented their list of witnesses and the DAB ruled upon the appropriateness of those witnesses If you could use real words, yes DAB is not other than a word for a little small unit of real cream Is not a real word. It would help us. We're not specialists. I my apologies It is a right now it alludes me. It's the board It's also for the board or the panel. It's a three-member panel of health care professionals in this case. They were nurses Who made with decision makers in this proceeding? So have there ever been circumstances where the VA has Allowed witnesses to be called Absolutely, and there were this the hearing in this case went on for over two days There are experts presented on both sides as well as fact witnesses So let me ask you this how? How is it possible to really discern from the record whether Rihanna's own admissions would be enough to justify his Dismissal when every single finding by the Appeals Board Appeared to rely on weighing his credibility against the written statements of undisclosed individuals Rihanna in other words if he was just relying on the fact of his admission and What the medical professionals said why even make reference to the statements by the Individuals and place the credibility issue at stake the board of panel in this case I believe was entitled to rely on those statements and they tied They went to great lengths to tie those individual statements to Rihanna's own admissions our brief in this case Goes to great length to insert facts from each and every one of the patients 19 of them says port count one and Rihanna was owned admissions. There's a whole list of what he said How is that viewed in light of the five statements is that he provided where it was some indication that they were sort of I don't know of course just probably too strong a word, but somehow their statements were skewed by the investigator He does make that argument that they were skewed and The government in this case goes to great lengths to point out that in fact There were only a limited number of statements as there was only interviews many of the patients provided written statements and Use their own words to describe what in fact Rihanna did to those patients during the examination for example Rihanna describes the technique he used as an engorgement technique He describes it as placing his hands at the base of the penis and Causing blood flow into that penis the patients describe it and it's characterized really for all intents and purposes as masturbation Which is what he what he has done to his patients here And which is what the board the reviewing board saw this as so Rihanna's own statements. He admits to that He won't call it masturbation He calls it his engorgement technique, and he mints his words as to what happens But it's obvious and the board concluded in their findings that in fact it was the same thing And of the 19 patients who supported count one these were not in fact anonymous to Rihanna He was well aware of 11 of them and who they were he in fact submitted a written response as part of his pre-termination hearing Identifying he said he knew who these people were and he wrote he put in writing as to why he did not Violate in his opinion the standard of practice And I would submit that Rihanna in fact Was not denied The right to cross-examine his accusers as he writes in his brief in fact I would submit that the Rihanna head was very happy that in fact none of the patients were called in this case The agency wanted to call patients including m1 who was the original patient in this case who made their report to the Milwaukee Police Department and in fact this was the patient who Rihanna Engorged to ejaculation not once but on two separate occasions Rihanna also did not call the investigator croissant who they allege whose they alleged investigation was tainted and Skewed as the court put it the entire investigation they had an opportunity to cross-examine or present him They chose not to do so. I Submitted they did not want these people to testify in fact waived their opportunity to pursue this investigation vigorously at that level As far as I'm sorry the board did make a judgment and apparently Announced in a ruling form that the patients would not be called to testify By either side that is correct, so we do we do have that as a concrete Ruling by the review board that is in fact a ruling by the review board They said it was in the interest of patient privacy I would submit to this court that that's the government exercising its In this case it was to protect these veterans from further humiliation for the debasement Right and there was an opportunity for either side to challenge that ruling In terms of an appeal neither side did that the plaintiff in this case I believe asked several times for the right to Have the names of the of the patients themselves and to call those individuals I'm not sure if they attempted to appeal that To anyone bring a motion in court for example to have that set aside. I don't think they did anything like that But the record will reflect a request that he be allowed to call them yes Yes There's a there were emails and it was actually a formal ruling from the board denying that under the guise of patient privacy And Had there been any evidence that the patients would not come forward I mean, you know Well in fact there were I believe six witnesses about five that were had been submitted There were patients that were testify on Rihanna's behalf in fact in the record there are two affidavits submitted ostensibly compiled by Rihanna's attorney at the time These were submitted to show that Rihanna had not abused these patients, but a careful reading of both these affidavits Corroborate what the government was saying in this case that Rihanna did in fact for all intents and purposes masturbate these patients during the examinations So those are available and all the all the information that Rihanna wanted to submit from these patients was in fact in the record Rihanna made no attempt to call any patient that was Negative to him or would have supported the government's position at the time For example Rihanna didn't call m1 the original witness he didn't made no attempt to call m1 the original witness who went to the Milwaukee Police Department and complained of being Sexually assaulted when he had his name. Yes. Yes, because that started the entire investigation that patient m1 Went to the Milwaukee Police Department then Rihanna was interviewed by the Milwaukee Police Department in regards to that patient designated as m1 Thank you. Thank you counsel Anything further, Mr. Misfeld? Well, thank you very much the case is taken taken under advisement